LOUIS TERRILL, a *Minor, etc., Appellee,* v. THE ARMOUR PACKING COMPANY, *Appellant.*

No. 17,394.

SYLLABUS BY THE COURT.

DAMAGES—*Personal Injuries—Negligence—Defects in Machinery.* The evidence in this case, and the reasonable inferences derivable therefrom, are sufficient to sustain a verdict for damages resulting from personal injuries caused by defects in the clutch and latch of a body press in the defendant's tin shop, which defects were negligently suffered to exist long enough that the defendant should have been aware of them.

Appeal from Wyandotte court of common pleas. Opinion filed February 10, 1912. Affirmed.

*Miller & Miller,* and *Samuel Maher,* for the appellant.

*J. E. McFadden, O. Q. Claflin, jr.,* and *James Fox,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff, a boy sixteen years old, was employed in the defendant's tin shop, and while at work there his left hand was mangled by a machine called a body press, used for cutting the bodies of tin vessels from sheets of tin. In an action brought for the purpose the plaintiff recovered damages for the injury and the defendant appeals.

The machine was in charge of an operator who worked at its front, or west, side. The plaintiff sat on

Terrill v. Packing Co.

a stool at the back, or east, side of the machine and stacked up the tin bodies as they fell to the floor from the machine. From the position the plaintiff occupied he could not observe the ordinary movements of the operator as he manipulated the machine. Sometimes pieces of tin would stick in the machine and when this occurred the operator would remove them. There was evidence that upon one such occasion the operator, whom the plaintiff was required to obey, said to the plaintiff, "See, Rastus, next time you can do this." A little later the operator said "All right, Rastus," and went away from the machine. The machine was not in motion and the plaintiff understood that he was to remove a piece of lodged tin. While he was doing so the machine started up, performed a single cutting operation, whereby the plaintiff's fingers were severed, and then stopped.

The machine cuts tin by means of a punch descending between vertical guides upon a die bedded on a frame supported by iron legs resting on the floor. The punch is pressed down and lifted up by a piston rod which is attached at its upper end to a crank shaft in the usual form. At the right side of the machine is a large wheel connected by a belt with a pulley on a line shaft at the top of the building. The line shaft communicates power to operate this and many other machines in the shop. The wheel, except when the belt is thrown for some special purpose, revolves all the time the line shaft is turning. The press works only when a mechanical connection is made between the wheel and the crank shaft. In the hub of the wheel is a bolt, called from its function a clutch, which is pressed back into a socket against a spring. In a solid drum or collar on the crank shaft is a pocket into which the clutch springs, when released, and so carries the shaft around with the wheel. The hub of the wheel and the drum of the shaft are an inch or more apart. When the clutch is back in the wheel it is held there by a

piece of steel called a latch, which is pressed upward, by the force of a spring, in front of a lug on the lower side of the clutch. The latch must be pulled down to release the clutch. From beneath a steel attachment called a fork projects upward so that the curved prongs lie between the hub of the wheel and the drum of the shaft. The fork has a stem extending downward, to the lower end of which is attached a heavy wire connected with a treadle. The fork is bolted to the press frame, does not revolve, and has none but a vertical motion. The stem is wound with a strong spring which keeps the prongs in position. The resistance of this spring must be overcome before the fork can come down, and this result is produced by pressure on the treadle by the operator's foot. When the treadle is pressed downward the under side of the fork catches a lug on the lower end of the latch and pulls the latch down. This releases the clutch, which flies out and seizes the drum of the crank shaft. A spiral groove is cut in the upper surface of the fork, and if as soon as the clutch is released the treadle also be released, so that the fork resumes its initial position, a lug on the clutch catches the groove and the clutch is forced back into the wheel as the wheel revolves. The latch then interposes and holds the clutch. The wheel and the crank shaft being thus automatically disconnected, the punch stops until the treadle is pressed again. The machine is so constructed that the operation described begins and ends when the punch is up, so that one stroke of the punch on the die is made with one revolution of the shaft. To prevent the shaft from being carried on by its own momentum after it is disconnected from the wheel a clamp brake surrounds the left end of the shaft, which is kept screwed tight enough to stop the shaft the instant the clutch leaves it. Should the treadle be held down the clutch would not catch the groove of the fork, would continue to engage the shaft, and the punch would continue to fall and rise.

Terrill v. Packing Co.

The petition charged that the movable top of the press (meaning the punch) is held in place, when raised up, by a trigger or clutch, until released by a foot pedal; that the operator left the press with the top raised and fastened by the trigger or clutch, that the trigger or clutch was worn and out of repair, by reason whereof it would fail to hold up the top of the press and would cause it to drop, carrying with it a sharp, knife-like die, with great force and suddenness; that by reason of the defective condition of the trigger or clutch the press became released and suddenly dropped down, causing the injury complained of; and that the condition of the machine was known, or by the exercise of due care should have been known, by the defendant. The operation of the machine and the functions of some of its parts are here misconceived, but the injury to the plaintiff is attributed to a stroke of the punch caused by worn and defective portions of the machine which from the description given are identifiable with the clutch and the mechanism whereby it is released to put the shaft and punch in motion. The plaintiff's evidence was as blind as his pleading, and it is argued that the demurrer to it should have been sustained. Since, however, the defendant made a commendable effort to disclose all the known facts relating to the controversy, even bringing into court the suspected parts of the machine and giving their history, the appeal should be determined upon the evidence as it stood when the parties rested.

The disputed questions are, whether or not the machine was defective in the parts referred to, whether or not, if it was defective, the defects were suffered to exist through culpable negligence, and whether or not, if the machine were thus defective, it had remained in that condition for such length of time that the defendant should have discovered and remedied its faults. These questions are questions of fact, the rules of law applying to them scarcely being in dispute. It is not

practicable to print even a condensed account of the evidence upon which each side relies, or to state all the pertinent inferences derivable from the facts proved. All that can be done is to indicate briefly the conclusions reached by the court, premising, as the defendant does, that the single irregular action of the machine which injured the plaintiff would not alone sustain the verdict, and that the defendant was not bound to supply a perfect machine, but was merely required to exercise reasonable prudence in that respect.

The foreman of the defendant's press department said that a machine which is out of order will act erratically—do anything; and that if the die [punch] of this machine should come down without any one putting his foot on the pedal he would say certainly that the machine was out of order. The punch of this machine did come down and cut off the plaintiff's fingers without any one putting his foot on the pedal, and so this machine was out of order. The clutch and latch were produced in court. The clutch had been made in the machine shop of the plant to take the place of another which was broken. Both the clutch and the latch were visibly worn, presenting a battered off appearance where they should come out true to a straight line. The wearing had occurred in two years of service, approximately one year before and one year after the plaintiff was injured. The wearing of the parts of the machine has an effect on its efficiency, when continued to a certain extent. They will reach a stage, consequent upon wearing, when the machine will not operate, and then they are useless. The condition of the parts of the machine shown to be worn has to do with the liability of their slipping, and if slipping should occur the machine would be set in motion. In the operation of the numerous pieces of machinery in the shop there was, as there was bound to be, more or less jar and vibration. The jarring of the machinery was sufficient to loosen lugs and burs and bolts and

things of that kind. Such jarring would have no effect
on the clutch and latch if in perfect condition, but it
was a factor of their environment in the condition they
presented at the time the plaintiff was injured. Some
of the other machines were in operation at that time.
Other testimony excluded the inference that the defect,
whatever it was, which caused the irregular action of
the machine lay in any of the parts except those which
induced the clutch to fly out and engage the shaft.
These were the very parts which were shown to be on
the way to uselessness through wear, and the jury had
the right to conclude that they were already inefficient
at the time of the injury and that they caused the in-
jury. There was opinion evidence to that effect. Pos-
sibly, as the defendant asserts, the witnesses who gave
such opinions were not qualified to express them. But,
throwing out such evidence, one and only one explana-
tion remained for the undenied action of a machine
necessarily defective. Undesigned operations of the
machine were referred to under the name of "repeat-
ing." If the operator should fail to release the pedal at
once the machine would make a second stroke, and so
"repeat." An improper adjustment of certain parts of
the machine may produce so much friction that repeat-
ing will occur. A witness for the defendant undertook
to limit the meaning of the term to such cases, but a
witness for the plaintiff applied it to the conduct of
machines like that exhibited in the present instance,
and the jury may well have concluded that repeating is
a warning that the latch and clutch may not be coöper-
ating as they should. The foreman of the defendant's
press department admitted that he had known this
machine to repeat, not often, but sometimes, so that the
inference of negligence against which the defendant
might have guarded by a timely inspection is fairly
warranted.

The testimony of the defendant was abundant and
strong to the effect that the clutch and latch were not

worn so as to affect their usefulness; that they would have been retained had they been inspected the moment before the plaintiff was hurt; that the machine had worked perfectly from that time to the time of the trial, almost a year, without irregularity and without repair; and that the caprice of the machine in this instance must have been due to slight imperfections which mechanical ingenuity is not able, as yet, wholly to eliminate. The weight to be given this testimony, however, was a matter for the jury to consider, and on this appeal only the facts and inferences favorable to the plaintiff need be considered.

The writer is so doubtful that a correct result has been reached that he is constrained to withhold assent to the foregoing opinion.

The judgment of the district court is affirmed.

BURCH, J., dissents.